**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ABRAHAM HUNTER,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.: 1:25-cv-13150

Judge Robert W. Gettleman

Magistrate Judge Beth W. Jantz

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**RENEWED MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**
**AGAINST THE DEFENDANTS IDENTIFIED IN FIRST AMENDED SCHEDULE A**

Plaintiff, ABRAHAM HUNTER ("Hunter" or "Plaintiff"), submits the following memorandum in support of Plaintiff's Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified in First Amended Schedule A (the "Defaulting Defendants") based on Plaintiff's action for Copyright Infringement (Count I). Excluded from this motion are Defendants who have completed terms of settlement with Plaintiff.

Plaintiff is the owner of the Copyright Registrations that protect the creative content of the Abraham Hunter Works. [1] at ¶ 8. Hunter is a self-taught painter who creates photorealistic, utopia-like scenes using oil, acrylic, and watercolor. *Id.* Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Abraham Hunter Works. *Id.* at ¶ 9. Thus, the Abraham Hunter Products and Works are widely recognized and exclusively associated by consumers, the public, and the trade as being associated with and authorized by Plaintiff. *Id.*

The success of the Abraham Hunter Works is due in large part to Plaintiff's marketing, promotional, and distribution efforts. *Id.* at ¶ 13. As a result of Plaintiff's efforts, the quality of

Plaintiff's Abraham Hunter Products, the promotional efforts for Plaintiff's products and designs, press and media coverage, and social media coverage, members of the public have become familiar with the Abraham Hunter Works and associate them exclusively with Plaintiff. *Id.* at ¶ 14. No one other than Plaintiff and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the Abraham Hunter Works without the express written permission of Plaintiff. *Id.*

On information and belief, the Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff Products, while selling inferior imitations of Plaintiff's Products. *See id.* at ¶¶ 6, 11. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing Product offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id.* at ¶ 7. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant online marketplace accounts (collectively, the "Defendant Internet Stores") identified in First Amended Schedule A. *Id.* at ¶¶ 2, 16. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Infringing Abraham Hunter Products to consumers within the United States, including the State of Illinois. *Id.*

Plaintiff filed this action on October 28, 2025, alleging Copyright Infringement and seeking statutory damages and injunctive relief. [1]. This Court granted Plaintiff's *Ex Parte* Motion for Leave to Conduct Expedited Discovery and Service of Process by E-mail and/or Electronic Publication (the "Order") on December 9, 2025 [21]. Paragraph 3 of the Order [21] permitted

Plaintiff to complete service of process to Defaulting Defendants by electronic publication or by sending an e-mail to any e-mail addresses provided for Defaulting Defendants by third parties. The Defendants identified in First Amended Schedule A that are associated with Amazon Payments, Inc. ("Amazon"), Temu, LLC ("Temu"), and Walmart Inc. ("Walmart") accounts were properly served on December 17, 2025. [24]. The Defaulting Defendants have not entered an appearance or otherwise defended this action. *See* Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on Count I of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). The Court denied Plaintiff's prior motion for default judgment without prejudice and granted leave to refile. [41]. Plaintiff now renews that motion; as shown below and in the accompanying Declaration of Yanling Jiang and Exhibits A and B, service is proper as to each Defaulting Defendant. Plaintiff further seeks an award of statutory damages as authorized by 17 U.S.C. §504(c)(2) for willful copyright infringement. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products, and that all assets in Defaulting Defendants' financial accounts operated by Amazon, Temu, and Walmart, as well as any newly discovered assets, be transferred to Plaintiff.

## **ARGUMENT**

### I.    **JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court

3

may properly exercise personal jurisdiction over Defendants since the Defendants directly target business activities toward consumers in Illinois and causes harm to Plaintiff's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold products bearing infringing versions of Plaintiff's federally registered copyrights to residents of Illinois. [1] at ¶ 2. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See, e.g., NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see also, e.g., Ronald Martin West v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12025 (N.D. Ill. Dec. 11, 2025).

## II.  SERVICE OF PROCESS IS PROPER AS TO EACH DEFENDANT UNDER *KANGOL*

The Seventh Circuit recently confirmed that the Hague Convention prohibits email service in China where the Convention applies, but that a district court must first determine whether the Convention applies at all. *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th

4

793, 795–96 (7th Cir. 2026). The Convention does not apply "where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. The standard this District applies requires "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address," and is conjunctive: a plaintiff must not only ascertain a listed address but verify it, for "[b]are assertions regarding the reliability of [a] [d]efendant's publicly available address are not a substitute for actual diligence." *NBA Props.*, 549 F. Supp. 3d at 796. Where a plaintiff investigates the platform-disclosed address and cannot confirm it as a real, usable location connected to the defendant, the address is "not known" within Article 1. *Cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at 2 (S.D.N.Y. Oct. 26, 2022).

Article 1 also turns on the identity of the party to be served. Under PRC law, only a defendant's registered Chinese-character legal name, or the registered Chinese-character name of the natural person to be served, has legal status for a Central Authority request; a romanized or English-translated platform trade name is not the defendant's legal identity, and a Request naming a defendant only in that form is, as practitioner authority explains, "assured of failure" because the executing local intermediate people's court cannot reconcile a romanized identifier to a registered entity in the SAMR registry. *See* Aaron Lukken, *Chinese Company Names, Flawed Addresses, and the High Likelihood of Hague Service Failure*, Hague Law Blog (Mar. 2024). The *Kangol* bar, moreover, is specific to China: it rests on the fact that China has objected to Article 10(a). *Kangol*, 177 F.4th at 801. The analysis for the three Vietnam Defendants therefore turns on Vietnam's own Hague declaration, not China's objection, and is addressed below.

For every Defaulting Defendant, Plaintiff's investigation began by cataloging the platform-disclosed address and searching it on independent, publicly available resources, capturing a

5

screenshot of each search. For the fifty-six China Defendants the investigation comprised (a) a Google web search, Google Maps, Baidu Maps (百度地图), and Amap (高德地图) of the stated address; (b) a check of the seller against the Tianyancha (天眼查) PRC business-registry database; and (c) decomposition of each platform identifier against the four required SAMR name elements (行政区划, 字号, 行业表述, 组织形式). Jiang Decl. ¶¶ 3–7; Exs. A, B. For the three Vietnam Defendants, whose addresses are not in China, the investigation comprised a Google web search and Google Maps of the stated Vietnamese address; the PRC registry and SAMR analyses do not apply to them. Jiang Decl. ¶ 8; Ex. A. The map verification for the China Defendants rests on Baidu Maps, China's dominant mapping platform, with the Amap disclosure noted in the Jiang Declaration. Jiang Decl. ¶ 4.

### A. The addresses of the fifty-six China Defendants are not known

For all fifty-six China Defendants, each identified by Schedule number in Exhibits A and B, Plaintiff's investigation confirmed that the Defendants' addresses are not known on two independent grounds. First, none of these platform identifiers supplies a registered Chinese-character legal name in the four-element SAMR structure. Instead, each is a romanized pinyin string, an arbitrary or English-fabricated storefront alias, or a partial trade name lacking the required components, therefore a Central Authority request naming any of them in its platform form is the pattern practitioner authority identifies as assured of failure. *See* Lukken, *Chinese Company Names, Flawed Addresses, and the High Likelihood of Hague Service Failure*, Hague Law Blog (Mar. 2024); Jiang Decl. ¶¶ 5–7; Ex. A. Second, and independently, each platform-disclosed address failed verification after reasonably diligent efforts, in recurring patterns documented in the exhibits: addresses that did not resolve at all; addresses resolving no lower than a district, township, rural village, or residential community rather than the stated street and unit; a

6

specific house, unit, room, workstation (工位), or market stall that map data confirms does not exist; a landmark or market-relative reference whose anchor does not exist or resolves to a different, unrelated establishment; and "office-only" (仅限办公) or virtual cluster-registration (集群地址) cells that do not identify the defendant's place of business. Jiang Decl. ¶¶ 5–7; Exs. A, B. Each address was thus ascertained but could not be verified to a serviceable, defendant-connected location, and each is "not known" within Article 1. *NBA Props.*, 549 F. Supp. 3d at 796; *Zuru*, 2022 WL 14872617, at *2.* Either ground independently supports email service under Rule 4(f)(3).

### B. *Kangol* does not bar email for the three Vietnam Defendants (Nos. 5, 16, and 34)

Defendant Nos. 5 BUI DUC TAM NB, 16 ĐỨC BALOTELI, and 34 BXCV4RE appear to reside in Vietnam. Jiang Decl. ¶ 8; Ex. A. *Kangol* does not bar email service on them, for two independent reasons. First, Vietnam, unlike China, has not objected to Article 10(a). *Kangol* prohibited email service in China for a single reason: the court declined to decide whether email is a "postal channel" and rested entirely on the undisputed fact that "China has objected to service under Article 10(a)," so that even if Article 10(a) "otherwise permits service by email as a type of postal channel," that channel was closed. *Kangol*, 177 F.4th at 801. This District reads that holding narrowly. *See Deckers Outdoor Corp. v. A AO*, No. 25 C 13065, 2026 WL 1802901 (N.D. Ill. June 23, 2026). Vietnam's declaration to the Convention provides that it "does not oppose … the service of documents through postal channels mentioned in paragraph a of Article 10 of the Convention if the documents forwarded via postal channels are sent via registered mail with acknowledgement of receipt." Hague Conf. on Priv. Int'l L., Declaration/Reservation/Notification: Viet Nam (last visited July 28, 2026)[1]. Because Vietnam leaves Article 10(a) open, the fact that drove *Kangol* is absent, and the Convention does not prohibit postal-channel service into Vietnam. Email is the

---

[1] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1337&disp=resdn (last visited Jul 28, 2026).

electronic form of that permitted channel, *see Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019), and email ordered by this Court supplies the delivery- and read-receipt confirmation that answers Vietnam's lone "acknowledgement of receipt" qualification, *see Kev & Cooper LLC v. Sen*, No. 23 C 1316, 2023 WL 12219342, at 3 (N.D. Ill. Nov. 3, 2023) ("service by email to an individual in Vietnam does not violate an international agreement"). Plaintiff acknowledges that one court read the registered-mail qualification to exclude email, *Cawthon v. Manh*, 2024 WL 4263141; that reading elevates form over the declaration's evident purpose and is, in any event, obviated by the independent ground below.

Second, and independently, the address of each Vietnam Defaulting Defendant is not known, so the Convention does not apply at all and Rule 4(f)(3) email is available in the Court's discretion. The escape the *Cawthon* court itself recognized. Plaintiff searched each stated Vietnamese address on a Google web search and Google Maps; each resolved no lower than a province, commune, or hamlet and could not be verified to the stated street or unit as a location connected to the Defendant. Jiang Decl. ¶ 8; Ex. A. The analysis is then identical to the China Defendants in Section II.A: the Convention is inapplicable under Article 1, and email is authorized under Rule 4(f)(3). Either way, email satisfies due process. Service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Each Vietnam Defendant operates an interactive Amazon storefront and maintains a platform-verified email address, the very feature that made email "a more reliable method of service" than an unverified physical address in *NBA Props.*, 549 F. Supp. 3d at 797, so email here is reasonably calculated to apprise each Defendant of this action and comports with due process.

8

Because the address of each of the fifty-nine remaining Defendants is not known, and because, as to the three Vietnam Defendants, Vietnam leaves the Article 10(a) channel open, the Hague Convention does not bar service by email, and this Court's prior Order authorizing service by e-mail and electronic publication (ECF [21]) supplies proper service. Plaintiff has therefore satisfied *Kangol* as to every remaining Defendant, and default judgment is appropriate.

### III.  PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On October 28, 2025, Plaintiff filed the Complaint [1] alleging Copyright Infringement (Count I). The Defendants were properly served on December 17, 2025. [24]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

### IV.  PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

At least twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by the Defaulting Defendants identified in First Amended Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate.

### A. Copyright Infringement

To properly plead a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff owns the registered copyrights in the Abraham Hunter Works. [1] at ¶¶ 3, 5, 8. Plaintiff alleged in the Complaint that Plaintiff's Abraham Hunter Works have been infringed. *Id*. at ¶¶ 17-22. Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Count I for willful copyright infringement against the Defaulting Defendants.

### B. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c)(1), a plaintiff in a case involving the use of a copyright infringement may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the

copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly but can be inferred from a defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (Finding that "[w]illful blindness is knowledge, in copyright law").

Here, Defendants had knowledge that their activities constituted infringement or at least a reckless disregard of Plaintiff's rights in the Abraham Hunter Works because Defendants are intentionally coupling the Infringing Abraham Hunter Products with goods derived from images in Plaintiff's copyrighted works. Thus, Plaintiff's request for a statutory damages award of one hundred thousand dollars ($100,000) from Defaulting Defendants for willful copyright infringement of the Abraham Hunter Works are appropriate. *See, e.g., Ronald Martin West v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12025 (N.D. Ill. Dec. 11, 2025).

A significant consideration should be whether infringing sales were made over the internet, the rationale being that sales over the internet increases the amount of an award because use of the internet made the infringement widely available. A finding of willful infringement is warranted along with an award of one hundred thousand dollars ($100,000) in statutory damages. *See, e.g.,*

11

*Ronald Martin West v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12025 (N.D. Ill. Dec. 11, 2025).

### C. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's Abraham Hunter Works. In this District, the "standard for a permanent injunction is essentially the same as for a preliminary injunction except that in seeking a permanent injunction, [Plaintiff] must prove actual success on the merits rather than likelihood of success on the merits." *Hicks v. Peters*, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998); *See Plummer v. American Institute of Certified Public Accounts,* 97 F.3d 220, 229 (7th Cir. 1996) ("Thus, when the plaintiff is seeking a permanent injunction, the first of the four traditional factors is slightly modified, for the issue is not whether the plaintiff has demonstrated a reasonable *likelihood* of success on the merits, but whether he has *in fact* succeeded on the merits."). The remaining factors are (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*.

### 1. Plaintiff has Proved Actual Success on the Merits

As set forth above, Plaintiff owns the registered copyrights for the Abraham Hunter Works. Declaration of Abraham Hunter (the "Hunter Declaration") at ¶ 5. The accused products use the

protected works or are derived from the distinctive creative content found in the Abraham Hunter Works. As such, the infringement is clear and establishes that Plaintiff has proven actual success on the merits of this claim.

### 2. There is No Adequate Remedy at Law and Plaintiff will Suffer Irreparable Harm in the Absence of Permanent Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988).

The harms caused by the copyright infringement of the Abraham Hunter Works are equally insidious. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, they devalue the Abraham Hunter Works by associating them with inferior quality goods, and they undermine the value of the copyrights by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop further artwork and markets for the existing works. *See* Hunter Declaration at ¶¶ 6-12. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiff will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiff's ability to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the

13

ability to infringe copyright protected work undermines the ability to develop and conduct business). Plaintiff will suffer irreparable harm if a permanent injunction is not issued. *See* Hunter Declaration at ¶ 13. Accordingly, Plaintiff has established that it will be irreparably harmed by Defendant's infringing conduct.

### 3. The Balance of Hardships Tips in Plaintiff's Favor

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendant "cannot complain" of being forced to cease its infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Abraham Hunter Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

### 4. Issuance of the Injunction is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the creative content of the Abraham Hunter Works extends far beyond protecting the

works of the producing studio. It also protects the integrity of Abraham Hunter Products and encourages creative expression.

Moreover, federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). This is equally true in the copyright context. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

## V.   CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against Defaulting Defendants, award statutory damages in the amount of one hundred thousand dollars ($100,000) from Defaulting Defendants pursuant to 17 U.S.C. § 504(c)(2), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Infringing Abraham Hunter Products and transferring all assets in Defaulting Defendants' financial accounts operated by Amazon, Temu, and Walmart to Plaintiff.

DATED: July 29, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

15

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to any e-mail addresses provided for Defendant by third parties that includes a link to said website.

/s/ *Keith A. Vogt*
Keith A. Vogt, Esq.